UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES A. BERGMAN and KATHLEEN M. LYNCH, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED AIRLINES INC. and UNITED CONTINENTAL HOLDINGS, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 12 C 07040<br>)<br>) Judge John J. Tharp, Jr.<br>)<br>)<br>)<br>) |

## ORDER

For the reasons set forth in the Statement below, the defendants' motion to dismiss [20] is granted, and because no amendment could cure the defect, the dismissal is with prejudice, and this matter is terminated.

## STATEMENT

The plaintiffs, James Bergman and Kathleen Lynch, bring a putative class action on behalf of air travelers who seek compensation pursuant to European Union Regulation 261 from United Airlines for flight delays and cancellations. This regulation, which applies to passengers with confirmed reservations on flights departing from airports in EU member states or arriving on an EU-licensed airline at an airport in a member state, creates a right of compensation for delays in excess of three hours and flights canceled on short notice. *See* EU Reg. 261, Art. 3, Art. 5. There is a limited exception when the cancellation is caused by "extraordinary circumstances," which are narrowly defined. United moves to dismiss the complaint, and for the reasons that follow, the motion is granted.

    **I.**    **Facts**

According to the allegations of the complaint, which are taken as true for purposes of this motion only, the plaintiffs had confirmed reservations on a United flight from London, England, to Chicago, Illinois, on July 14, 2012. Their 12:20 p.m. departure was canceled early that same morning; they were forced to re-book another flight and arrived at their ultimate destination—Jackson Hole, Wyoming—about 24 hours later than scheduled. The flight cancelation was not caused by extraordinary circumstances, such as political instability, extreme weather, security risks, or a labor strike. Plaintiffs were not compensated for their troubles. United, the complaint alleges, routinely fails to compensate travelers for long delays and flight cancellations that are not caused by extraordinary circumstances.

**II.     Discussion**

A motion to dismiss will be granted if the Court, taking all the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, concludes that the plaintiff fails to state a claim for relief that is plausible on its face. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634-35 (7th Cir. 2012).

United argues that the complaint must be dismissed because: (1) EU 261 does not provide a private right of action enforceable in the United States or in a class action proceeding; (2) The Airline Deregulation Act ("ADA") prohibits a United States district court sitting in diversity from enforcing foreign laws that relate to an airline's services; and (3) The Montreal Convention provides the exclusive cause of action for Plaintiffs to recover damages arising from their delay in international transportation and preempts any other causes of action. The Court begins with the first issue, which is dispositive.

United maintains that the plaintiffs are not entitled to obtain relief under EU 261 in this Court, or any state or federal court in the United States. United argues that that the regulation exclusively empowers courts of EU member states, or administrative bodies designated by the member states, to enforce it. The plaintiffs, on the other hand, contend that even though the regulation contemplates the creation of "responsible bodies" in EU member states to enforce compensation rights, those fora are not exclusive.

This is not a novel issue. Multiple courts in this district have addressed the same arguments and have concluded that an action to enforce EU 261 is not cognizable in the district courts of the United States.[1] Indeed, the local courts that have decided this particular issue are unanimous.[2] *See Gurevich v. Compagnia Aereas Italiana*, No. 11 CV 1890, Dkt. # 105 (N.D. Ill. Mar. 18, 2014) (granting motion to reconsider and dismissing direct claim to enforce EU 261); *Polinovsky v. Deutsche Lufthansa, AG*, No. 11 CV 780, 2014 WL 958666, at *3 (N.D. Ill. Mar. 12, 2014) (Coleman, J.); *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 2014 WL 551603, at *4 (N.D. Ill. Feb 12, 2014) (Durkin, J.); *Lozano v. United Continental Holdings, Inc.*, 2013 WL 5408652, at * 3 (N.D. Ill. Sept. 26, 2013) (Nordberg, J.); *Volodarskiy v. Delta Air Lines, Inc.*, 2013 WL 5645776, at *6 (N.D. Ill. Oct. 16, 2013) (Chang, J.).

These decisions are not binding, but they are persuasive in their interpretation of EU 261. The regulation clearly creates a private right of action—something United does not dispute. The issue is whether a direct action to enforce the regulation is cognizable in the courts of the United

---

[1] The issue is also pending before the U.S. Court of Appeals for the Seventh Circuit in *Volodarskiy v. Delta Airlines, Inc.,* Appeal No. 13-3521 (oral arg. Apr. 17, 2014).

[2] This case—in which the plaintiffs seek to directly enforce EU 261—is factually and legally distinguishable from those in which the plaintiffs brought a breach-of-contract claim where the terms of EU 261 were directly incorporated into their tickets. *E.g.*, *Giannopoulos v. Iberia Lineas de Espana*, Case No. 11 C 775, Dkt. # 145 at 1 (N.D. Ill. Nov. 1, 2012) ("The tickets incorporated Iberia's conditions of contract, a three-page document that incorporates multiple regulations including the Montreal Convention and EU 261.").

States. The question boils down to whether "the EU intended for EU 261 to be applied extraterritorially by specifically allowing passengers to file claims under this regulation in courts outside the EU." *Lozano,* 2013 WL 5408652, at * 3 (N.D. Ill. Sept. 26, 2013). The language of the regulation answers that question in the negative.

United relies primarily on Article 16 of the EU 261 to support its argument against extraterritorial enforcement. Article 16.1 provides that "[e]ach Member State shall designate a body responsible for the enforcement of this Regulation as regards flights from airports situated *on its territory* and flights from a third country to such airports" (emphasis added). And Article 16.2 states that "each passenger may complain to any body designated under paragraph 1, or to any other competent body *designated by a Member State . . . .*" Article 16.1 and 16.2 together suggest that enforcement is the province only of the member states' own responsible body or another "competent body" designated by the member state. In other words, for a cause of action to be available in this Court, a "Member State" would have to designate the U.S. courts as a "competent body" for enforcement of the regulation, which has not been done.

United also relies upon legislative history, which suggests that the EU Parliament had no intention to create a right enforceable in the United States. Indeed, to the extent that one can glean any uniform intent from a legislative enactment of a partnership comprising more than two dozen independent and sovereign nations, it would appear to be more consistent with a desire to *avoid* "exterritorial application of Community law." (Def. Ex. F, Dkt. # 21-1, *Proposal by Commission of the European Communities*, 12/21/2001, COM (2001) 784 Final, ¶ 19). EU law more generally strives for unity of implementation across the member states, and it would be anomalous for the EU to place enforcement capabilities in courts that are not subject to review by the unified courts of the EU. Given the text of the Regulation and the supporting legislative history, "the better interpretation is that the EU contemplated and intended that such claims would be filed only in the courts of Member States." *Lozano*, at *3. In any event, the language of EU 261 is sufficiently clear that there is no need to resort to legislative intent to plumb its meaning.

The plaintiffs concede that the EU "require[s] each member state to establish a responsible body to enforce its regulations," but they contend that passengers are not required to complain to such a body. Instead, they claim that the combination of paragraph 22 of the Preamble and Article 15 show that EU 261 is not limited to EU forums. Paragraph 22 of the Preamble states that the "Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks" but adds that this "supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law." The plaintiffs argue that "national law" is the law of any "nation" rather the law of any EU Member State. But the word "national" in the Preamble is best understood as referencing the law of the Member States; the Regulation does not create any distinction between the law of member states and "national law." *See Giannopoulos v. Iberia Lineas Aereas de Espana SA*, No. 11 C 75, 2014 WL 551603 *3 (N.D. Ill. Feb. 12, 2014). Instead, the clear import is that "national law" refers to member state law *as opposed to EU law*. As Judge Durkin explained, Article 14.2 of the Regulation—which pertains to notice of passengers' rights— uses the word "national" to modify the phrase "designated body referred to in Article 16"; only a "nation" that is a Member State

3

can designate an enforcement body under Article 16. *See id*. And "[i]n terms of its overall structure, EU 261 consistently uses the phrase 'Member States' when discussing various rights and duties." *Lozano v. United Continental Holdings, Inc.*, 2013 WL 5408652, *3 (N.D. Ill. Sept. 26, 2013). Given that the Regulation only refers to Member States in creating these rights and duties, and does so within ¶ 22 itself, it would be incongruous for the word "national" in the Preamble to imply a right of enforcement elsewhere in the world. (Indeed, plaintiffs do not offer any alternative to "national" as an adjective that would refer exclusively to the law of a Member State.) To read "procedures of national law" to refer to the "national law" of any forum inside or outside the EU is inconsistent with the language and structure of ¶ 22 and the regulation as a whole.

The plaintiffs also note that Article 15.2 allows passengers to take their EU 261 compensation claims "before the competent courts or bodies" to obtain "additional compensation" if, without notice of their rights, they accept inferior compensation. They argue that without an express limitation that these be "courts or bodies" of Member States, the regulation authorizations claims in *any* court or body. Again, however, the plaintiffs interpret the absence of a qualifier as an affirmative license, even though the actual enforcement provision, Article 16, makes clear that enforcement actions may be brought only in the courts and bodies designated by Member States, and it explicitly ties enforcement actions to the "territory" of the Member States. The plaintiffs insist that if the EU "had any intention to limit the forums exclusively to those in EU-member states it could easily have done so." Certainly a prohibition on extraterritorial enforcement could have been expressed in the Regulation's text, but that does not refute the textual cues that "courts and bodies" within the EU member states are solely responsible for enforcement of EU 261, unless and until any other court or body is "designated" by an EU member state.

The plaintiffs also argue that this is "simply a choice of law issue," and that "U.S. federal courts commonly apply foreign laws in similar circumstances, and the applicability of foreign substantive law is neither 'unusually difficult' nor so 'burdensome' as to justify dismissal." But arguing that this is just a choice of law issue "presupposes that Plaintiffs have properly stated a claim that is cognizable in this Court (or any other United States Court)." *Volodarskiy,* 2013 WL 5645776, *5. In other words, the plaintiffs assume that because this Court *can* apply foreign law in some cases, it is authorized to do so in this one. But they must get past the courthouse door first. This is a direct claim under EU 261: there is no possible "choice of law" issue where the plaintiffs only have a right to relief under this single regulation and have not invoked any other applicable substantive law. The Court agrees with Judge Durkin that the argument is "illogical." *Giannopoulos*, 2014 WL 551603, at * 3.

Finally, the plaintiffs cite *McKesson Corp. v. Islamic Republic of Iran*, 672 F.2d 1066 (D.C. Cir. 2012) for the proposition that foreign law is enforceable in the United States. In *McKesson*, the D.C. Circuit held that under the Treaty of Amity (between Iran and the United States), the plaintiffs could bring a claim against Iran under Iranian law in U.S. courts. 672 F.2d at 1078. But, as Judge Chang pointed out in *Volodarskiy*, the D.C. Circuit "also held that the Iranian-based cause of action could proceed in a United States court because the two countries had explicitly agreed in the Treaty that courts in either country could hear claims brought under the Treaty. . . . Thus, it was not just that the Treaty did not *prohibit* claims in U.S. courts, but

4

also that the Treaty expressly *authorized* those claims. Here, by contrast, the United States has no treaty obligations to entertain disputes arising from EU 261, nor does EU 261 authorize enforcement in United States courts." *Volodarskiy*, 2013 WL 5645776, at *5 (internal citations omitted). What is lacking here was present in *McKesson*: a clear authorization making the plaintiff's right enforceable in an American court.

      This Court therefore joins the chorus in holding that a direct claim for compensation under EU 261 cannot be brought in the courts of the United States. Because this conclusion disposes of the plaintiffs' only claim for relief, and the lack of cognizability cannot be remedied, it is not necessary to address the other grounds United advances in support of its motion. The defendant's motion is granted and the claim is dismissed with prejudice.

Entered: June 18, 2014

John J. Tharp, Jr.
United States District Judge

5